**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ELLINGSON DRAINAGE, INC.<br>56113 State Hwy. 56,<br>West Concord, MN 55985,<br><br>        Plaintiff,<br><br> v.<br><br>UNITED STATES FISH & WILDLIFE<br>SERVICE<br>1849 C Street, N.W.<br>Washington, DC 20240;<br><br>Director of the U.S. Fish & Wildlife Service<br>in his or her official capacity<br>1849 C Street, N.W.<br>Washington, DC 20240;<br><br>MATT HOGAN, in his official capacity as<br>Regional Director, Mountain-Prairie Region<br>of the U.S. Fish & Wildlife Service;<br>1 Denver Federal Center Building 53<br>Room FW100<br>Denver, CO 80225<br><br>WILL MEEKS, in his official capacity as<br>Regional Director, Midwest Region of the<br>U.S. Fish & Wildlife Service<br>5600 American Blvd. West Suite 990<br>Bloomington, MN 55437-1458;<br><br>UNITED STATES DEPARTMENT OF<br>INTERIOR<br>1849 C Street, N.W.<br>Washington, DC 20240;<br><br>DOUG BURGUM, in his official capacity as<br>Secretary of the Department of the Interior<br>1849 C Street, N.W.<br>Washington, DC 20240,<br><br>        Defendants. | Case No. 1:25-cv-541 |

**COMPLAINT**

## INTRODUCTION

1. Plaintiff Ellingson Drainage, Inc. ("Ellingson") is a third generation, family-owned company that provides construction planning, design, and installation services to farmers throughout the Midwest. Among other things, Ellingson installs subsurface drainage systems ("drain tile") that improve the productivity of the nation's farmland.

2. Many of Ellingson's clients farm are in the "Prairie Pothole" region of the Upper Midwest, including North Dakota, South Dakota, Minnesota, and Iowa. During the early 1960s, Defendant U.S. Fish and Wildlife Service ("the Service") acquired conservation easements over wetlands on farms in the Prairie Pothole regions. Prior to 1976, however, the deeds of easement prepared by USFWS did not describe what wetlands they covered on a property. *See United States v. Johansen*, 93 F.3d 459, 461 (8th Cir. 1996). As a result, "there has been a considerable amount of confusion regarding what the earlier wetland easements actually covered." *Id.* at 463.

3. In 2020, the Service issued a guidance memo to address the confusion over these easements. United States Department of Interior Fish and Wildlife Service, *Drain Tile Setbacks and Legal Action on U.S. Fish and Wildlife Services Wetland Easements* (Feb. 26, 2020) ("2020 Guidance").[1] Pursuant to the memo, the Service informed landowners that it would issue estimates of what it believed to be

---

[1] https://www.fws.gov/sites/default/files/documents/Guidance-Memo-Drain-Tile-Setbacks-Wetland-Easements.pdf.

2

the scope of existing wetland easements and how it would calculate where farmers could install drain tile on their encumbered properties.

4. In 2024, the Service promulgated a final rule interpreting the scope of these easements ("2024 rule"). *National Wildlife Refuge System; Drain Tile Setbacks*, 88 Fed. Reg. 26,244 (Apr. 28, 2023) (to be codified at 50 C.F.R. pt. 25). The rule severely restricts farmers' ability to install drain tiles and states that *any impact*—no matter how minor—on a purported wetland is a violation of the terms of the easements. But North Dakota law and the common law generally recognize that the owner of property encumbered by an easement may use his or her property in a reasonable manner even when such use minimally impacts an easement holder.

5. The 2024 rule and the Service's interpretation of the prairie pothole easements have prevented Ellingson from installing drain tiles on clients' properties. Because of this lost business, Ellingson brings this challenge to the 2024 rule.

6. Ellingson asks this Court to hold unlawful and set aside the 2024 rule because the rule misinterprets the scope of the easements it purportedly covers and fails to articulate any standards for its decision. Thus, the 2024 rule is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 5 U.S.C. § 702 (providing for judicial review of agency action under the APA).

8. Venue in the District of the District of Columbia is proper under 5 U.S.C. § 703 and 28 U.S.C. § 1391(e), because Defendants are agencies and officers of the United States, Defendants reside in the District of the District of Columbia, and a substantial part of the events or omissions giving rise to the claim occurred in the District of the District of Columbia.

**PARTIES**

**Plaintiff**

9. Plaintiff Ellingson Drainage, Inc. is a Minnesota corporation with its principal place of business in Minnesota. It specializes in installing drain tiles for farming in, among other places, Minnesota, North Dakota, and South Dakota. It does business as Ellingson Companies.

**Defendants**

10. The United State Fish & Wildlife Service ("the Service") is an agency of the Department of the Interior. The Service is divided into eight different management regions across the United States. Under the Migratory Bird Hunting Stamp Act of March 16, 1934, as amended, the Service has used funds from the sale of Federal Duck Stamps to purchase wetland easements from private property owners in the upper Midwest. In 2024, the Service promulgated the final rule that is the subject of this action that sets out its interpretation of these wetland easements.

11. The Director of the United States Fish and Wildlife Service is charged with managing longstanding organizational responsibilities of the Service. In that

capacity, the Director oversees the Service's administration of the Waterfowl Production Area Program.

12. Matt Hogan is the Regional Director of the Mountain-Prairie Region of the United States Fish and Wildlife Service. As Regional Director, he is responsible for the administration and management of the Service in North Dakota, South Dakota, Nebraska, Kansas, Colorado, Utah, Wyoming, and Montana. Mr. Hogan is sued in his official capacity.

13. Will Meeks is the Regional Director of the Midwest Region of the United States Fish and Wildlife Service. As Regional Director, he is responsible for the administration and management of the Service in Minnesota, Wisconsin, Iowa, Missouri, Illinois, Indiana, Michigan, and Ohio.

14. The United States Department of the Interior is an agency of the United States and responsible for the management of most federal lands in the United States. The Department, through the Fish and Wildlife Service, manages the Waterfowl Production Area lands and wetland easements that are the subject of this action.

15. Doug Burgum is the Secretary of the United States Department of Interior. As Secretary, he oversees the agencies within the Department, including the Fish and Wildlife Service. Mr. Burgum is sued in his official capacity.

## LEGAL AND FACTUAL BACKGROUND

### Prairie Pothole Easements

16. This case involves easements held by Defendant U.S. Fish & Wildlife Service in the "Prairie Pothole" region of the Upper Midwest.

17. Prairie potholes are depressional wetlands that were formed by glacial melt following the Pleistocene era. Some of these wetlands are permanently filled with water, but others simply flood during wet periods and are naturally dry for most of the year. Defendants consider even small depressions—comprising less than one-tenth of an acre—that are dry nearly the entire year, as prairie potholes.

18. During the early 1960s, Defendant U.S. Fish and Wildlife Service acquired conservation easements over many prairie potholes.

19. Before 1976 these easements did not describe where they applied or what "wetlands" they covered. *See Johansen*, 93 F.3d at 461. Instead, the easements used identical language saying that the owner would

> cooperate in the maintenance of the … lands as a waterfowl production area by not draining or permitting the draining, through the transfer of appurtenant water rights or otherwise, of any water including lakes, ponds, marshes, sloughs, swales, swamps, or potholes, now existing or reoccurring due to natural causes … by ditching or any other means.

*See id.* at 461–62.

20. The easements also specifically allowed farming practices to continue.

21. The only clue to how much land was governed by these easements was an agreement between the Governor of North Dakota and the Service that 1.5 million acres had been encumbered. *Johansen*, 93 F.3d at 461. This was because the statute

allowing the Service to acquire these easements required consent of the state involved. *See id.*

22. "Since 1976, [the Service] has recorded a map locating the covered wetland acres as part of every easement document. However, as a consequence of the former practice and the fact that prairie potholes, by nature, are ill-defined and subject to fluctuation, there has been a considerable amount of confusion regarding what the earlier wetland easements actually covered." *Id.* at 463.

23. Despite not being part of the easements, the Service later published an easement summary for each tract of land, which purported to identify the covered wetlands and the acreage subject to the easement on each tract. *Id.* at 462.

24. The United States has routinely indicted and prosecuted farmers in North Dakota for allegedly draining wetlands subject to these easements. *See id.* at 463.

## 2020 Guidance

25. In 2020, in response to the legal uncertainty concerning the Service's wetland easements and the growing use of drain tile on farmlands with such easements, the agency issued a guidance memo titled "Drain Tile Setbacks and Legal Action on U.S. Fish and Wildlife Services Wetland Easements," (Feb. 26, 2020) ("2020 Guidance").

26. The 2020 Guidance informed landowners that the Service would issue estimates of what it believed to be the scope of existing wetland easements and calculate where farmers could install drain tile on their encumbered properties.

27. The 2020 Guidance stated that when the Service works with a landowner to design a tile installation plan, the Service's actions should aim to protect the wetland areas from drainage without needlessly restricting activities on the remainder of the easement.

28. The 2020 Guidance stated that when the landowner coordinated their tile planning with the Service, and adhered to Service-provided setback distances, the Service would not pursue legal action if it is later determined that the distances are inadequate to protect wetland areas from drainage.

29. According to the 2020 Guidance, if a landowner did not follow Service-provided setback distances, or changed the tiling parameters on which setback calculations are based, and drainage of the protected wetland occurred, the Service would request that tile within the setback distances be removed to restore the affected wetland area.

30. The 2020 Guidance specified that the Service would use the van Schilfgaarde equation to calculate where farmers could install drain tiles. The van Schilfgaarde equation was developed to determine the effect of drainage systems on water table drawdown in saturated soil conditions.

## 2024 Rule

31. On May 13, 2024, the Service issued a final rule entitled "National Wildlife Refuge System; Drain Tile Setbacks." 89 Fed. Reg. 41,336 (May 13, 2024). The rule states that the Service "promulgate[d] new regulations pertaining to

wetland easements to bring consistency, transparency, and clarity for both easement landowners and the Service in the administration of conservation easements[.]"

32. Despite stating that "the guidance memo remains in full effect" the 2024 Rule issues regulations that are inconsistent with the 2020 Guidance. *Id.* at 41,339.

33. For example, while the 2020 Guidance stated that the purpose was to protect wetlands from drainage, the 2024 Rule lays out a much stricter purpose.

34. Specifically, the final rule states that "The regulations we are adopting in this final rule provide clarity and certainty to landowners that drain tile may be installed on lands encumbered by a wetland easement provided that protected wetland areas are not drained, directly or indirectly." *Id.* at 41,337.

35. The rule further states that it "distinguishes Service wetland easements from the 'Swampbuster' provisions of the Food Security Act of 1985 (also known as the 'Farm Bill'; Pub. L. 99-198), which allow drain tile to have a 'minimal effect' to wetlands." *Id.* Instead, the 2024 Rule codifies the Service's position that "wetland easement agreements with landowners include provisions that allow for no effect; hence, drain tile may be installed on a wetland easement tract, but it is a violation of the easement contract if the result is that the tile drains a protected wetland area." *Id.*

36. The final rule also distinguishes itself from the 2020 Guidance by not committing to any specific process to calculate the setback distances. The 2024 does not specific a calculation process because "[i]ncluding the calculation processes of the

9

Service's guidance memo in the regulations, however, would not be in the interest of the Service or landowners." *Id.* at 41,341.

37. Instead, the rule states that "the Service has codified our obligation to use the best available science in regulation and will then keep our publicly available, detailed internal guidance up-to-date and effective." *Id.*

## Ellingson Companies

38. Ellingson specializes in installing drain tile for farming across the United States including in North Dakota, South Dakota, and Minnesota.

39. The Service's interpretation of its wetlands easements in the Prairie Pothole region, including the 2024 Rule, has resulted in Ellingson losing business.

40. Specifically, Ellingson had at least one farmer contact the business hoping that Ellingson would install drain tiles on his property, then later inform Ellingson that he could not install drain tiles because of the Service's recommended drain tile setbacks on his property.

41. Ellingson's drain tile installations, were they to be installed near the Service's wetlands easements, would only have a minimal effect on such wetlands.

42. Because the Service purports to allow "no effect" on its wetland easements, Ellingson is prevented from doing business in large swaths of the Prairie Pothole region.

### Administrative Procedure Act

43. The Administrative Procedure Act provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.

44. Pursuant to the APA, a court must set aside agency action that fails to meet statutory, procedural, or constitutional requirements; or is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A)–(D).

### FIRST CLAIM FOR RELIEF
### Unlawful Expansion of Easement
### (APA, 5 U.S.C. § 706(2))

45. Ellingson incorporates by reference the allegations set forth in the preceding paragraphs.

46. The Service's easements are limited in scope and do not extend to non-wetland portions of one's property. "As the easement agreements make clear, however, the restrictions apply only to wetlands areas and not to the entire parcels." *North Dakota v. U.S.*, 460 U.S. 300, 311 n.14 (1985). "This obviously means that the restrictions mentioned in the easement agreements do not apply to portions of property, which, although included within the easements' legal description, do not meet the definition of a wetland as expressed in the easement agreements." *United States v. Vesterso*, 828 F.2d 1234, 1242 (8th Cir. 1987).

47. The 2024 Rule states that the Service can limit activity on non-wetland portions of the property, despite not having an easement over those portions.

11

48. The Eighth Circuit has already rejected a previous Service interpretation that "any action that would inhibit the collection of water in a particular depression would violate its interest in existing and future wetlands." *Johansen*, 93 F.3d at 466.

49. In *Johansen*, the Court looked to "traditional norms of real property conveyance" and held that, in order for a property owner to be liable for violating the easement, the government must prove that "*covered* wetlands (as existing at the time of the easement's conveyance and described in the Easement Summary) were damaged[.]" *Id.* at 466–67.

50. According to the 2024 Rule, "Service wetland easement agreements with landowners include provisions that allow for *no effect*; hence, drain tile may be installed on a wetland easement tract, but it is a violation of the easement contract if the result is that the tile drains a protected wetland area." 89 Fed. Reg. at 41,337 (emphasis added).

51. By stating that drain tiles must have "no effect," the 2024 Rule goes beyond protecting wetlands, or the Service's easement rights, and advances an interpretation that is inconsistent with traditional norms of real property conveyance.

52. At common law, "the holder of the servient estate is entitled to make any use of the servient estate that does not unreasonably interfere with enjoyment of the servitude." Restatement (Third) of Property (Servitudes) § 4.9 (2000). Likewise, "the holder is not entitled to cause unreasonable damage to the servient estate or

12

interfere unreasonably with its enjoyment." Restatement (Third) of Property (Servitudes) § 4.10 (2000). "In resolving conflicts among the parties to servitudes, the public policy favoring socially productive use of land generally leads to striking a balance that maximizes the aggregate utility of the servitude beneficiary and the servient estate." *Id.* at cmt. b.

53. The Service's interpretation of its easements, set forth in the 2024 Rule, preventing normal farming practices which have even minimal effect on the Service's easements, results in unreasonable interference with the enjoyment of the servient estate. Regular farming practices are a reasonable use of farmland encumbered by an easement. Indeed, the language of the conservation easements contemplate that farming will continue.

54. When a farmer installs drain tiles, and the Service's easements are only minimally affected, the Service's enjoyment of the servitude is not impaired. Federal regulations elsewhere recognize that farming practices which may have a minimal effect on wetlands, like installing drain tiles, are still consistent with the preservation and protection of wetlands.

55. The Service's interpretation of its rights under the easement thus fails to strike a balance that maximizes the aggregate utility of protecting wetlands and allowing normal farming practices and is not a reasonable interpretation of the scope of its easements.

56. The 2024 Rule advances an interpretation of the Service's wetlands easements that exceed the scope of the Service's rights under those easements.

57. The 2024 Rule is thus arbitrary, capricious, in abuse of discretion, or otherwise not in accordance with law.

## SECOND CLAIM FOR RELIEF
### Failure to articulate standards for determining setbacks
### (APA, 5 U.S.C. § 706(2))

58. Ellingson incorporates by reference the allegations set forth in the preceding paragraphs.

59. An agency's articulation of a standard to guide its decision-making is essential to reasoned administrative decision-making. This rule derives from the requirement that an agency identify a rational connection between the facts found and the decision made. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

60. Unlike the 2020 Guidance, the 2024 Rule does not set out a standard for calculating drain tile setbacks.

61. Thus, the 2024 Rule is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

## Prayer For Relief

Wherefore, Plaintiff respectfully requests the following relief:

1. Declare that, in promulgating the 2024 rule, Defendants acted arbitrarily, capriciously, abuse their discretion, or otherwise failed to act in accordance with law.

2. Declare that Defendants may not interpret their wetlands easements in a manner that causes unreasonable damage to the servient estate or interferes unreasonably with its enjoyment.

14

3. Declare that Defendants may not interpret their wetlands easements in a way that requires the servient estate to act in a way that results in "no effect" to any wetlands on the property.

4. Hold unlawful and set aside the 2024 Rule.

5. Award Plaintiff any other relief the Court deems just and proper under the circumstances of this case.

DATED: February 24, 2025.

Respectfully submitted,

s/ Jeffrey W. McCoy
JEFFREY W. McCOY
D.D.C. Bar No. CO00124
Email: jmccoy@pacificlegal.org
Pacific Legal Foundation
1745 Shea Center Dr., Ste. 400
Highlands Ranch, CO 80129
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

AUSTIN W. WAISANEN
Wyoming Bar 8-7023*
Email: awaisanen@pacificlegal.org
Pacific Legal Foundation
508 17th Street
Cody, WY 82414
Telephone: (307) 213-0511

Attorneys for Plaintiff

*Pro hac vice pending